ACE is number 24-3286 Osmani Savane against Secretary of the United States Department of Homeland Security. Thank you. Mr. Creech. Thank you. Good morning, your honors, or good afternoon, your honors. May it please the court. Timothy Creech, representing the appellant Osman Savane in an appeal from a denial of a position for naturalization to a diversity visa winner back in 2010. He applied for and... Do you reserve time for rebuttal? Yes, I'm sorry. I reserve three minutes, your honor. Very well. Thank you. Go ahead. Mr. Savane applied for and won the diversity visa and came to the United States by himself. He was eligible for that visa because he had come from the country of origin that was on the list for that year, and he had the educational requirements that were needed to come, and he wasn't inadmissible by any of the requirements of the statute. When he applied for his naturalization, he was denied because they said that he had children that weren't disclosed in the diversity visa application. Which is correct, right? That is correct. That's not disputed. What is disputed is that that was a requirement of the statute that would make him barred. The cases that were cited by the district court were two cases out of the Eastern District of Virginia that relied strictly on the Code of Federal Regulations and the field manual of the Department of State and not statute. Am I correct, Mr. Creech, in understanding the crux of your argument is that the Code of Federal Regulation provision is inconsistent with the statute and, under Loper-Bright, ineffective? Yes, your honor. Before we get into that, let me just ask a quick follow-up. I take it then you concede that if that legal argument is incorrect under the regulation, then we should affirm the judgment of the district court? No. In other words, the case rises or falls based upon the legitimacy of that CFR provision? If the regulation is consistent, if the statute bars him from entry because he didn't disclose his children in the application, then he's not eligible for citizenship. But that's not what the statute says. But the regulation? Of course, the regulation says what it says. If the regulation is valid, you lose the appeal. If the regulation is invalid, you win the appeal. Yes, your honor. Okay. Go ahead. Yes. And that regulation is not based on any of the statutory requirements. When we look at what the statute provides, it says that a diversity visa, it's 1182C, really is a very broad statute. It really is welcoming people into the United States from different regions that are considered to be underrepresented, where Mr. Savan was from. He had the education requirements, and he was free to come without his children, not in unusual circumstance. Really, what the statute was designed for was to allow people to have opportunity to come to the United States with or without their families to build a life here, which is what Mr. Savan did, and he did it successfully. What about the regulation 103.2 about signing, and when a falsehood cuts off a fruitful or material line of questioning that you have not lawfully obtained? Yes, your honor, a couple things about that. One, I think that goes to the issue of whether there was a willful misrepresentation in the application. But I don't think that one requires willfulness. Well, in any event, one of the points that had come up that was in the depositions that took place in the district court was you don't even need to be able to speak English or read English. It's not one of the requirements of this. There was a coach, someone by the name of Zakpo Apollinaire, who filled out these applications. It was kind of his job there in the Ivory Coast. That was the one that advised your client to lie, the coach. No, your honor. I thought the coach said don't put the children down. The coach filled out the application. The coach did not. And your honor, again, that sort of determination, if there was an advice to lie and we were going to determine that, that would be a question of willfulness. All right, so the coach completed the application, but your client, did the office in Cote d'Ivoire, the consular office, know that this coach completed the application? I believe that that would have been common knowledge, your honor. We weren't able to depose the State Department representatives or get any evidence about what they did or didn't know. It's common knowledge that applicants to the diversity waiver program are having third parties complete their applications for them? Yes, that was in the deposition. Okay. The State Department admitted that in their testimony. All right, so then does it mean that as long as the third party, whatever lies the third party puts on the application can't be chargeable then to the applicant? Is that how this works? Your honor, again, we're getting into the willfulness of the misrepresentation. If that was something that – All right, forget that it's intentional then. Let's just say it's a misrepresentation that's not intentional. Are misrepresentations by third party coaches or other people that fill out these applications on behalf of an EDV applicant, are those misrepresentations not chargeable to the applicant him or herself? Your honor, if that misrepresentation was something that would have barred his entry to the United States under the statute, it wouldn't matter. It was what the district court said. All right, but that's a different issue. Let me try to pin you down a little, and if it's unfair to pin you down, then please tell me why it's unfair. Because the answer to the question I just asked, you pivoted back to the legal argument. I think I understand your legal argument. Your legal argument is when you look at the constellation of provisions in the United States Code, the statute, this regulation doesn't work with it. It doesn't map on. It has a requirement that isn't there. As you said earlier, the regulation is invalid. If we find that you're right and the regulation is invalid, then you win. But if the regulation is valid, then you lose. What Judge Chung was asking about, what I was following up on, is this regulation, 103.2A2. You then first argued that under that regulation, it requires willfulness. No. No, okay, it doesn't require willfulness. No, you're right. All right, then if it doesn't require willfulness and state of mind is not important here, then I don't understand why we would be disagreeing about or talking about the coach or who thought what when. Isn't it all sort of a given here that we all know what happened? In fact, your client, to his credit, in the final interview admitted that he gave a wrong answer in the previous interview, right? Your Honor, none of that, I think, about what happened in that interview and those things is before this court. If the case were to be remanded for some reason to say that his credibility needed to be evaluated or something like that, it would be here. We're here on a black letter law question of whether or not he had to disclose those children to be eligible, and nothing else matters today. And so going back to 103.2, the signature requirement, which you just said, does not require willfulness. It does require materiality under Kozelnik, if I'm saying our case name correctly, which I'm not confident, but it does require materiality. And the government and the district court seem to say the manual and the cap were the basis for materiality. Seems like 1182A4A would also be a basis for materiality, that being inquiring into whether or not someone is likely to be a public charge at any time in the future. So can you address whether or not having children is material under 1182A4A? Yes, Your Honor. Thank you. Materiality for the public charge question. Yes. I do not believe that that is related. Somebody who has or doesn't have a child in Africa while they're living here in the United States is no more or less likely to become a public charge. In order to enter the United States, he needed to prove that he would not become a public charge. He had to have a sponsor. He had a sponsor to come here by himself. He didn't bring those children. He put not applicable or the coach put not applicable in the application when it came time for the children. We don't even have the original application. So the statute, though, about public charge 1182A4 says that the INS is supposed to look into family status. So how is that not relevant? It's not relevant to the family status because he doesn't have the family with him, Your Honor. But it doesn't say family status regarding people who might come with the applicant to the United States. It just says there's at a minimum the attorney general or the consular officer shall consider the age, health, family status, assets, resources, etc. So it seems that number of children, wherever they may be, would be have some relevance. I don't see how it is, Your Honor. Not if he's not bringing the children with him. Do you agree that public charge is about likelihood to become a public charge is looking at one's ability to financially support oneself in the United States?  And could one's ability to support oneself in the United States be affected by one's financial obligations outside of the United States? No, Your Honor. There's no obligation that could possibly be enforced on him in the Ivory Coast. How can you say that when in many third world countries, a huge foundation of their actual economy is the remittance of United States dollars from loved ones here back to the family in the country of origin? And in no circumstance, Your Honor, could he have made such remittances to the point where he's now a public charge? I don't understand what public charge... No, not. I mean, if you're a father who wants to feed your two kids who are in your country of origin, that's a tremendous financial burden. And you've got to work your tail off the United States. You've got to save a lot of money. You've got to pay your rent. You've got to have a job and do all these other things and send money home to help your family. But you seem to be acting like that's not what people do. And I guess I'm suggesting that's what everybody does, at least people that love their kids. And in what way could having to do that make you more likely to be a public charge than if you didn't have to do it? Well, OK, let me... That's a fair question. Let me try to answer your question. So if I come here and I have two kids in my country of origin and my monthly income is $4,000 a month, OK, that's $48,000 a year. That's my monthly income is $4,000, OK, after taxes. And my rent and food and other things are $3,000 a month. OK, so I've got $1,000 to the good. So maybe I send $1,000 a month back home. I get fired from my job or I am told by the boss that, you know, I can't keep you on at the same pay rate. So I'm going to have to cut your pay 70 percent. If my pay gets cut 70 percent, now I'm underwater. Now I might be living out of my car. I mean, these are... I guess I'm just surprised that the argument that someone who comes here might be in a very tenuous financial situation while trying to manage all these difficult things, supporting oneself here in a new country, working, etc., while also taking care of minor children back home. Well, that's their moral obligation, not a legal obligation. Correct, correct. We're on the same page there. It's not a legal obligation. And in no way relevant to any... What public benefit would Mr. Savan have been able to apply for in the scenario that Your Honor just described? Well, he doesn't... That he wouldn't get because he didn't have the children. He doesn't have health care. He doesn't have health insurance. None of which... Having children overseas doesn't affect your ability to get health insurance. Sure it does, because if he's remitting $1,000 a month back home, that's $12,000 a year he could spend to buy a health insurance policy. And now that's $12,000 he doesn't have, so he doesn't buy health insurance. And now when he gets in a car accident, he goes to a local hospital and he pays nothing. It wouldn't make a difference, Your Honor. I mean, if we can speculate about how he would or wouldn't have saved his money if he wasn't spending it on these children. Your Honor, he could have gone back to Africa... ...about the relevance and cutting off a relevant line of inquiry. And to Judge Freeman's point, the statute expressly says it's relevant. So, I mean, doesn't that end the discussion? I don't see how... Okay, you're talking about family status. You're talking about people that you have to take care of in your household. When somebody applies for... There's a statutory factor in considering a specific basis for ineligibility. Which, of course, would be relevant. And by the way, how does one avoid, practically speaking... ...how does one avoid the public charge concern when they come to the United States? They have a sponsor. So that if Mr. Sivan was in an auto accident... It isn't whether or not he actually became a public charge. The question is whether it cuts off a line of questioning that is material. It's not whether or not he actually... I actually want to take that into a question for you here. So the standard, as we've articulated it a couple of times, is the standard for materiality. Is whether the misrepresentation tends to shut off a line of inquiry... ...which is relevant to the alien's eligibility... ...and which might well have resulted in a proper determination that he be excluded. So what I hear... Well, the point that I was making is it seems to me that under the statute... ...we have to say that a misrepresentation about family status tends to shut off a line of inquiry. I guess my next question... I know you disagree with that, but my next question would be... ...do we also have the second half of this test, of the materiality test? And which might well have resulted in a proper determination that he be excluded. And I hear you saying, well, no, it wouldn't have resulted. There's no chance that it might well have resulted in that because he had a sponsor. But I guess what evidence do we have in the record as to the second part of the materiality standard... ...whether he might well have been excluded had he... It's the absence of that evidence, Your Honor, that supports my client's position. We're speculating about things that might have happened that, if they did happen, would have resulted in what? That there's no benefit that he would have gotten that he couldn't have gotten. There's no expense that the United States or that any state would have had to pay... ...or that the public would have been charged with paying for him that it wouldn't have had to pay. And speculating about this, I think this is the idea of hiding the elephant in the mouse hole... ...by creating this regulatory requirement on something that really has no real-life bearing. There's no way that him having the... Right now, though, I just want to be clear. I'm not talking about the regulation. I'm talking about the statute because there's an admissibility criteria that has to do with likelihood of becoming a public charge. And materiality goes to that criteria. So if we could just focus in on that and set a... Yes, exactly. And so if he's in a car accident and now he needs medical care... ...it wouldn't have mattered how many children he did or didn't have. And before he becomes a public charge, his sponsor is going to be on the hook for that... ...which is something that the State Department vets and clears him on before giving him the diversity visa. So that was already cleared. And the fact that he has an auto accident and might have an auto accident... ...isn't more or less likely a problem no matter how many children he has and doesn't bring with him. That's the point. So I guess the answer is, like, what information do we have about his likelihood of becoming a public charge because of the children? In the record, the existence of a sponsor. Is there anything else that you think is in the record that goes to this inquiry... ...or is there additional record development that might be necessary to resolve... ...whether the disclosure of his children might well have resulted in a determination that he be excluded? Well, Your Honor, I think that's... If the government had something to present that would say, this is why we think this... ...because when you go through the briefing and we look at this public charge question... ...it's just kind of said out there. They never developed a record on that. They never really explained why. I don't think it's really any practical, relevant relationship. There's no record to develop because the disclosure about the children was never made. It's a counterfactual. We're speculating, as you pointed out earlier. When you go through the brief, Your Honor, I don't see where they're saying how this would have made a difference. We hear, like, this discussion that we're having now isn't something that the United States raised at any point during these proceedings. It's throughout public charge, along with everything else they could kind of think of, really just using the regulation. This wasn't the basis of Judge Beadlestone's decision. It wasn't the basis of the other two Eastern District of Virginia decisions. They were all just looking at the regulation. Nobody actually explored this and gave us a real-world consequence to not disclosing the children... ...to show that he was more likely to become a public charge in any way. And we can speculate about it here. Your Honors, I don't see it. And the government really hasn't raised this. If you go through their briefing, they don't really put forth any sort of meaningful argument. If they had, maybe I would have, in the reply brief, had more of an opportunity to respond to the sort of things that are being raised here. But everything that we're discussing here, frankly, I expected to see more about that. I heard the public charge argument come up, and I said it's speculative, and that's pretty much where it left. And then the government never picked up and said, these are where we can see the real-world consequence of not saying you have children. Which we can contrast with the Ingetti case, where you don't disclose a spouse, you submit a false death certificate. Being a polygamist is an excludable reason under 1182. It's right there. Committing a crime of moral turpitude is an excludable reason. When you go through the statute and you go through the cases, there's no case that's cited by the government in any of these briefs... where they're using a regulation to create this sort of requirement on somebody, and then hoping to be excludable. Like the district court did here, and the other two district courts did that decided this issue. This would be a first, and it would run contrary to... I just want to follow up on Judge Freeman's focus here, which is... So whose burden was it to show that it could have resulted in a proper determination? There would have to be... there has to be something more than speculation. But I mean, whose burden is it to develop it beyond speculation? I think it's just a legal question, Your Honor. Right, I'm asking you the legal question. Whose burden is it to develop it beyond speculation? Your Honor, that's... I think that if there were a reason, a rational basis to do this, a real-world consequence to the failure to make the disclosure, that is something that the court can evaluate now. I don't... I mean, the burden... I mean, I put... we put forth our position, which is that it's not relevant. I mean, to say that... do we have a burden to prove it's not relevant? I mean, if the United States wants to come forward and explain to you why it believes this is a relevant inquiry, it can make those arguments like any other sort of... I'm just trying to understand. It sounds like what you're saying in your answer now is that the burden is the government's. So is that what you're saying? Your Honor, I'm saying that any time the government wants to say that this is a line of inquiry that's shut down, or this is something that's material, it needs to make a showing here to this court in a way that it would be. And it never did that. And if the government's response is, well, it's in the statute, then... Focusing again on the part that Judge Freeman was focusing on, which seems like the right focus here, is whose burden is it to show that it's a non-speculative... you know, your argument is it's speculative. I mean, clearly it is. It's just who should have developed it, you or the government. That's all I'm trying to... The government... I believe, Your Honors, the government waived its argument that it's material to public charge by not arguing in its brief. It has not presented that issue to this court. So even if it were your burden, they waived it, is what you're saying? Even if it were... because what we say it's not, and we say there's no evidence that it is. I mean, how do we prove a negative? We say that this is not material to that, and the government, in its brief, never takes that head on. It doesn't take on... there's no part of its brief that says this is why it's material to public charge. It's just not there. So if that was an issue that was here, I think it was more in terms of how an appellate brief is developed for this court.  We'll hear you on rebuttal. Thank you, Mr. Creech. Thank you. Mr. Cardin. Mr. Cardin, I'm going to help you out there. It might be distracting to us if you don't turn your caller down. There you go. May it... Zachary Cardin from the United States. May it please the court. I believe that the court is correct with the foundational principle that if it's a valid regulation, we, for lack of a better word, we win, and if it's not a reasonable regulation, then it goes the other way. Appellant failed to comply with the clear regulatory requirements by withholding critical information when completing his diversity visa application. By omitting his children, the appellant obtained an immigrant visa under false pretenses and used it to gain admission as a lawful permanent resident. Under 8 CFR 103.2, every applicant must provide a complete and truthful information and certify that those contents are true. All right, but it has to be material to be a problem, right? Yes. If they put their age down and they omit the... They get the year wrong by one year by accident or... That's not a problem, right? It has to be material. Yes, and this court has held that a failure to abide by 103.2 in Kozolnik is a material omission. Well, when you say failed to abide by 103.2, doesn't it depend on how one fails to abide? In other words, isn't it possible that there are parts of that form that are not significant if there's a mistake made, or is it a strict liability test? If my actual birth year is... If the applicant's birth year is 19... If it's January 10th of 1981 and the applicant has, you know, a problem that morning and writes down January 11th, 1981, is that material? The... I'm not sure about your hypothetical, but the absence of children on an application is material because of the public charge, the 1182A4. Just broadly, children are very expensive. And DHS operates under the assumption that a parent's duty to support his dependent children does not turn on whether they are physically present in the United States. So even accepting that, the duty to care for children in other countries, is there any reason to believe that having two children would be disqualifying for Mr. Savan in particular? Statutorily disqualifying, no. But that's not the standard. The standard is whether it would cut off a line of inquiry. But the standard is whether it would cut off a line of inquiry and which might well have resulted in a proper determination that he be excluded. So I'm asking about the second part, after the and. Is there any reason to believe that Mr. Savan disclosing his two children might well have resulted in a proper determination that he be excluded? Yes, because the statutory cap is 55,000. So if there was only one visa left, that would be over the cap? Yeah, so I don't see anything in the record that says that children who are not going to be coming to the country on the diversity visa are included in the statutory cap. They can, even though Mr. Savan doesn't have an intention, they can still come over. At some point in the future, but that doesn't have to do with the statutory cap for the diversity visa, the year that he won the visa lottery. I mean, he could bring them over that year. So you're saying that if he had disclosed that he had two children, then the government would have necessarily included those children in the statutory cap for diversity visas? Yes. Do you have authority for that? While you're looking for that, I'll just point you to the the deponent that the State Department put on in this case, who said that when an applicant applies just for him, then and no children, then that does not count. That counts as one person for the statutory cap. For the for the children question, I would direct the court to the Makata case cited in our briefs. And also as to the it's not just the statutory cap that having two children can lead can be the public charge. I thought it was something more fundamental, which is I have never been a consular officer. But if I were the consular officer interviewing candidates for the EDV program, I would want to know how many times the applicants been married. Are they currently married? Do they currently have children? How old are the children? I would want to know all those things because, for example, what if the applicant had a child who had a very, very grievous health problem? So let's say that the coach lies on the form and says no children. When the lottery person comes over, it's not hard to get the children to immigrate after that, is it? It's not hard to get them to further immigrate. You're correct. In other words, to get other family members to follow the initial person. Exactly. OK, and then so one of my children requires, you know, one hundred thousand dollars a year in medical treatment because he was at a grievous, you know, birth defect or something. I mean, that those are all things I assume a consular office wants to know before the consular office officer makes these decisions. Exactly. And that is the explanation for the HCFR one or three point two rule in the regulation, the forty two point three three rule about material. If in fact you do have the kid with one hundred thousand dollars every year and bills, or is it material regardless of your obligations to the children or not? So, I mean, if for in one, let's say I don't disclose the fact that I have two kids, but I'm leaving them behind. They're healthy. My husband's very wealthy. They're never, ever. There's no chance they will ever be. They've got a marvelous trust. There's no chance he'll ever be a burden on me or the United States. Is is the is materiality still met in that instance, just because a line of inquiry has been cut off about my children? In other words, because they didn't get to find out that I've got a rich husband who and the kids have a trust fund or. Yes, it's the the standard is whether it cuts off a line of inquiry or whether it influences the decision maker. But I'm trying to focus on the part that Judge Freeman's focusing on, which is the second part cuts off, which might well have resulted in a proper determination. And so so is it material only if they had asked the questions and hey, you know, there's a chance there's like some health problems there. There's no trust fund. Maybe the family will stay. Does it only count in that situation as material or is it always material? It's always material. The immigration system relies on the applicants to provide to provide accurate and truthful information. It can't function if the applicant chooses what information it's going to abide by and what information it's not going to follow and then explain why this possible and invisibility ground doesn't apply in this certain scenario. I understand that maybe as a as a general proposition, if we're writing on a clean slate, but don't we have to apply our precedent that says that it's not only about shutting off a line of inquiry, but also about what might well have been the result had that inquiry not been shut off. And so it seems to me that applying our precedent, we would have to have some evidentiary showing that disclosing the existence of these two children might have resulted in him being rendered inadmissible. Respectfully, Your Honor. No, as the court said, as the court said in Kayla, it takes a strict, a strict view of misrepresentation in immigration filings regarding the failure to provide accurate information renders the agency's grant of LPR status not in compliance. Okay, but then why would there be a materiality standard at all? The. Can you ask the question in a different way? If a lie is disqualifying, then why bother having a materiality standard? Sorry. The material. I, I think that the materiality standard is met with the CFR 103.2. You could fill out your application and not have and do something wrong and not violate 103.2. And then we would look at whether it's material or not. But but this court, but I thought earlier you were saying every violation of of filling out the form is material. Sorry. Any violation of 8103.2 is material. And there's the regulation of 42.33 that tells the applicant to list their their biographical information of their children, regardless of whether they live with them or intend to intend to bring with with them or not. All right. So I want to make sure I understand your argument. You're saying that noncompliance with with Section 103.2. A2 is always material. 8103.2. Yes. 103.2. A2 or something else. Yet. Yes. Your Honor, that is what I'm saying. And the court has said that the lack of bringing over the that the failure to disclose children cuts off a line of inquiry. We understand that. It meets that standard. All right. But I want to press you on the notion that noncompliance with 103.2. A2 is always material. And I'll try to give you a better example than the one I I offered earlier. What if on the form that's being filled out? The applicant doesn't know what day it is and puts the wrong date. This is something that people do all the time. Right. You know, today, I guess, is October 21. But people will sometimes put down October 20. Or they often put down the wrong year. When it's January, they put down the prior year instead of the current year. That happens from time to time, right? Yes. Okay. If something like that happens on the form, is that a violation of 103.2 A2 or not? I can't. I don't have an answer to that to that question for you. The withholding children, the kids that we have now is clearly. All right. So you seem to keep falling back on the position that you can't help us with a limiting principle. You can't tell us what's material or not. You can't help us draw that line. But you keep repeating that wherever that line is drawn, failure to disclose children is material. Let me try to do a better job.  Kongs in the Supreme Court said that it has to influence the decision maker. Has to actually influence the decision or have the potential to influence? Have the potential to influence the decision maker. Okay. So on your example with the wrong date, that. Your Honor, can I? Go right ahead. Okay. That can't. That wouldn't influence a reasonable decision maker. Okay, then. Then that's very helpful. Thank you. So then back to Judge Freeman's question. Tell us why the failure to disclose or how the failure to disclose children would potentially influence a reasonable decision maker. Thank you. Your Honor, I think you explained it better than I could. If you have a person who has a child who has $100,000 in medical expense, the immigration official can look at the same guy with an individual with the same job, the same money, and say that this individual without the child is not a public charge. And the other individual with the sick kid is a public charge. When you say isn't and is, we don't know. You're just predicting. We're predicting as a predictive matter. As a predictive matter. And that is one of the admissibility. Absolutely. Okay. So two people, each of them has one child. One child has a very expensive disorder. The other child is perfectly healthy. So it seems that the relevant evidence is the health of the child, right? So it's something beyond the existence of a child. Beyond the existence of a child. Yes, Your Honor. I would say that every child, there's a story behind them that the immigration official has a duty to investigate. Are there any more questions? I think we're good. Thank you very much, Mr. Cardin. We'll hear rebuttal from Mr. Creech. Your Honors, none of what we heard about a child's physical condition, it appears anywhere in the field manual, the regulations, the statute, or anything else. The government is speculating. Then why is the government asking the question whether the applicant has children? If it's not relevant, if it's not material, why would it be on the form? Exactly. You're saying the question should not be asked. We as a nation should be granting diversity visas to people without knowing whether they're married, how many times they've been married, how many times they've been divorced, how many offspring they have. None of that matters. I didn't say anything about marriage. Marriage is different. That's the Ingetti case. Marriage is one thing. Why is marriage so critical but parenthood unimportant? Yes. That seems like a rather strange dichotomy. Because the statute says that an inadmissible alien is one that's practicing polygamy. That's the difference. I think we're talking about 1182A4, which talks about likelihood of becoming a public charge and specifically says that they're to consider family status. Well, Your Honor, I think that the family – by the way, remember, he put not applicable on this application when it came time to do that. And oddly enough, Your Honor, about the discrepancy in the dates, there was one in the record. Mr. Savant's education records had the wrong date of birth, and he had to go get that corrected with his school before he was found to be admissible under the statutory requirement that he have a certain education requirement before being eligible for the visa, which he had, and he corrected, and then he got it. But to say that family status and that having these children and if the child – I don't know where it says in the manual or anywhere else that if you've got a disabled child that you're leaving behind when you come here, we're not going to give you the visa. But we would have given you the visa if your child was healthy and it was on the form. Forget about health. They're all healthy, but wouldn't the officer want to know who has children and who doesn't because of the ease with which people who immigrate to this country can bring along nuclear family members, not to mention extended family members? Which, of course, could happen at any time. It doesn't matter when the children were born or not born. It's just not a material – it wasn't material. In other words, is the State Department going to say since you have these children and you might bring them over someday in the future, we're not going to give you this visa that we would have given you otherwise? That's not a requirement. And the cap – by the way, Mr. Pomquist dispensed with that. I don't know why they mentioned the visa cap. If he does not bring those children with him at the time that he comes, it has nothing to do with the diversity visa cap at all. That's not how the cap works. That's just completely a red herring. The visa cap is not a reason to rule in this case one way or the other. But isn't the whole point of the diversity visa program to spread it around and sort of spread the wealth, the lottery? The lottery is expanded to a variety of countries, right? So if you have country A and country B and you're going to bring in 10,000 people from country A and 10,000 from country B, okay? And the 10,000 people from country A have no children, okay? You just brought in 10,000 people from country A and that's that. And the 10,000 people from country B each have 10 kids. Well, all of a sudden you brought in 10,000 people from country A and probably, you know, many, many more from country B. You're bringing in 110 times as many people from country B. That doesn't sound like a very rational way to run a diversity visa program. It has nothing to do with the diversity visa. The winner of the visa could have—if Mr. Savan had 10 children and listed all 10 children in the application and didn't come with any of those 10 children, the State Department—what would the State Department have asked him when he's going to come to this country by himself and leave his 10 children behind? What would they have asked him that they wouldn't have—that they didn't ask him? Wouldn't part of the interview be, you know, how old are your kids and who takes care of them and do you financially support them and do you intend to bring them with you to the United States? Those all seem like obvious questions to ask. None of which have to do with whether or not he would be—  Public charge. When he did bring his children—when he did bring his children to the United States, he needed to prove at that time that they wouldn't become a public charge. He had to do that again so that when it's time to bring the children over, you have another burden. So if he had had the children after he had come to the United States, it wouldn't have mattered if they were born before or after. He still needed to submit proof to the United States when the children came that they wouldn't be a public charge. And when Mr. Savan did bring his children over as a lawful permanent resident, he had enough income himself to satisfy that requirement. So, Your Honor, if the child is—got some disease where if you bring them to the United States, it's going to mean you're more likely to become a public charge or not, they're going to be inadmissible at that time. That wouldn't affect Mr. Savan's eligibility for his visa when he got it in 2010. And none of what is mentioned here is in the brief at all of the United States. It just says—one line on page 22 relates to an applicant's ability to support himself and relates to the visa cap. If the applicant presently intends to—it's just not argued. And that's where I say— We can affirm for any reason on the record, though. So there's— I understand that, Your Honor. Forfeiture can't help you here on that score. I understand, Your Honor. I just think that this argument—if the field manual had said what kind of questions that they would have asked that would have made the difference about having the children or not having the children, we could say something other than speculating that it mattered, then that would be a different story. We haven't seen any of that. None of that's in the record. And what's also not in the record that I think is really important is that when you hear, is it going to be a burden on him or the United States, I don't know where or how having a child overseas that isn't coming with you could ever make you more likely to be a burden to the United States when you're here. It's just not practically—like when you evaluate the practicalities of this, it doesn't add up. That's just not—it's speculation, and it's grafting onto the statute a requirement that's not there based on speculation here now when Congress could have put that in there as a requirement. When the children come, he has to prove that they're not going to become a public charge, which he did when the children came. Thank you, Mr. Creech. Thank you. Thank you, Mr. Cardin.